| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| **DUANE MORRIS LLP**<br>Walter J. Greenhalgh, Esq.<br>Ugo Colella, Esq. (*pro hac vice pending*)<br>John J. Zefutie, Jr., Esq.<br>The Legal Center<br>1037 Raymond Boulevard, Suite 1800<br>Newark, New Jersey 07102<br>P: 973-424-2000<br>F: 973-424-2001<br>Email: wjgreenhalgh@duanemorris.com<br>Email: ucolella@duanemorris.com<br>Email: jjzefutie@duanemorris.com<br><br>*Counsel for Creditor*<br>*Ketan Patel* | |
| In re:<br><br>VOICEPULSE, INC.,<br><br>  Debtor. | Chapter 11<br><br>Case No. 16-25075(MBK)<br><br>Judge: Honorable Michael B. Kaplan<br><br>Hearing Date and Time:<br>September 15, 2016, at 10:00 a.m. |

**LIMITED OBJECTION TO ENTRY OF A**
**FINAL ORDER APPROVING THE USE OF CASH COLLATERAL**

Ketan Patel ("Mr. Patel"), by and through his attorneys, Duane Morris LLP, respectfully submits this limited objection to the entry of a final order approving the Debtor VoicePulse, Inc.'s ("Debtor") use of cash collateral.

**PRELIMINARY STATEMENT**

1.      Mr. Patel offers this limited objection to the use of cash collateral to the extent that Ravi Sakaria ("Mr. Sakaria"), who is Debtor's current President, owner, and sole shareholder, continues to pay to himself the head-snapping salary of $8,000 per week, which

amounts to a salary of roughly $400,000 per year. Debtor is a small business, which, upon information and belief, has only five employees including Mr. Sakaria.

2. Apparently, Mr. Sakaria pays himself a salary as an employee, and, in addition to that exorbitant salary, has repaid to himself $29,669.28, which Mr. Sakaria has characterized as a "reimbursement" of a shareholder loan in the amount of $33,250. As described below, the nature and extent of Mr. Sakaria's lending activity with Debtor is unclear.

3. At this time, Mr. Patel (an unsecured creditor) has no objection to the use of cash collateral for carrying on Debtor's business (excluding the payment of Mr. Sakaria's salary). Mr. Patel, however, currently is without sufficient information to fully assess the condition of Debtor. On August 25, 2016, Mr. Patel issued two Subpoenas pursuant to Bankruptcy Rule 2004—one to Mr. Sakaria and another to Dean Koehler of Koehler and Co., who provides professional accounting services for both Debtor and Mr. Sakaria personally. Since issuing those subpoenas, counsel for Mr. Patel and Debtor have been working to address certain objections and to coordinate dates for production and depositions. As such, Mr. Patel reserves his right to revisit this issue and others once that outstanding discovery is obtained.

## BACKGROUND

4. Mr. Patel is Mr. Sakaria's cousin. Mr. Patel was the co-founder and was the co-owner of Debtor. In 2003, he left a stable job and relocated to New Jersey to develop Debtor's business with his cousin, Mr. Sakaria. Mr. Sakaria currently is the Debtor's President, owner, and its sole shareholder. Mr. Patel has not been involved with the oversight, management, or finances of Debtor since 2010, other than receiving financial reports pursuant to a Settlement Agreement reached in a separate litigation with Mr. Sakaria (described below).

5. During seven years of hard work, Debtor's business and revenues grew to a point where it had relocated into office space and hired employees. During this time, Mr. Patel's and Mr. Sakaria's salaries were substantially similar and were drawn through Debtor's payroll. Mr. Patel's salary in 2010 amounted to $2,400 per week ($124,800 annually).

6. During that period of growth, Mr. Patel's responsibilities expanded to include total control over the Debtor's day-to-day operations. Mr. Patel was the Chief Operating Officer of Debtor at least as early as May 2004, approximately one year after Debtor's formation. As of 2007-2008, all employees reported to Mr. Patel, and Mr. Patel held weekly staff meetings to discuss Debtor's business. Mr. Sakaria handled Debtor's finances.

7. In 2009, Mr. Patel and Mr. Sakaria agreed to hire an experienced management team to operate the Debtor's business. Once that new management team was in place, both Mr. Patel and Mr. Sakaria, as co-founders and co-owners of the company, would continue to receive compensation.

8. After a new Chief Executive Officer and Chief Financial Officer were hired and put in place, they discovered the financial condition of Debtor was in disarray. They discovered that not only had Mr. Sakaria received hundreds of thousands of dollars in "reimbursements" without submitting an expense report, but that tens of thousands of dollars that rightfully belonged to the Debtor were instead improperly used by Mr. Sakaria for his own personal gain. Mr. Sakaria, for example, used company funds for lavish casino stays (*e.g.*, a whopping $55,000 tab at the Bellagio casino in Las Vegas) and for significant online poker activity. The new management team also discovered that Mr. Sakaria had failed to file federal and state tax returns

for several years, and that he similarly failed to pay certain fees due and owing to the Federal Communications Commission ("FCC").[1]

9. The new management team informed Mr. Patel and Mr. Sakaria—the co-founders and co-owners of the company—of the critical financial status of Debtor through a written memorandum circulated in or about February 2010. It was decided that the best way to handle Debtor's financial crisis was for Mr. Sakaria to exit the company by having Debtor sell its assets to a new venture co-owned by Mr. Patel and the new management team. To that end, from February 2010 through August 2010, the parties negotiated the terms of an asset purchase agreement.

10. In September 2010, however, Mr. Sakaria abruptly ceased negotiations and terminated the management team. One month later, in October 2010, Mr. Sakaria purported to terminate Mr. Patel and claimed, contrary to the parties' longstanding understanding and contrary to Mr. Sakaria's representations to third parties, that Mr. Patel in fact had no equity interest in the Debtor.

11. Mr. Patel commenced litigation against Debtor and Mr. Sakaria personally in the Superior Court of New Jersey, Chancery Division, Middlesex County. *See Patel v. Ravi Sakaria and VoicePulse, Inc.*, Docket No. MDX-C-208-10 (the "New Jersey Litigation").

12. In the New Jersey Litigation, Mr. Patel alleged breach of contract, breach of fiduciary duty, conversion, fraud, unjust enrichment, and he requested relief under the New Jersey Oppressed Minority Shareholder Statute, N.J.S.A. 14A:12-7. The Chancery Court entered a temporary restraining order, ordered Mr. Sakaria to continue paying Mr. Patel his regular salary, and expedited discovery with regard to Mr. Patel's ownership of Debtor.

---

[1] As this Court is aware, the Internal Revenue Service filed a Proof of Claim in this case for $342,912.59, comprising of unpaid taxes and interest due since 2013.

4

13. The parties exchanged documents. Mr. Sakaria was deposed and, among other things, admitted that his resume contained misrepresentations ("embellished" was his word) about his background, education, and the revenues of Debtor. Approximately 30 days after the New Jersey Litigation was commenced, Mr. Patel, Mr. Sakaria, and Debtor settled. The parties entered into a Settlement Agreement pursuant to which Mr. Patel was to receive two initial payments, and then subsequent monthly payments from Debtor for a period of six years.[2]

14. Since January 2012, Mr. Patel received payments pursuant to the Settlement Agreement, but Debtor defaulted on many occasions and made the required monthly payments during the cure period specified in the Agreement.

15. On August 5, 2016 (the "Petition Date"), after missing another monthly payment and requiring another default notice, those payments ceased as Debtor had initiated these proceedings pursuant to Chapter 11 of the Bankruptcy Code.

## ARGUMENT

16. At this time, Mr. Patel offers this limited objection to the use of cash collateral to the extent that Mr. Sakaria continues to draw a "salary" of $8,000 per week.

17. As this Court is aware, Debtor currently is a small business that supposedly has negative cash flow. For example, based on upon Debtor's Statement of Cash Flows submitted on August 19, 2016, Debtor had a negative cash flow in the amount of $193,502 (from January 1 to August 5). A true and correct copy of that Cash Flow Statement is attached hereto as **Exhibit 1**. Mr. Sakaria, however, has continued to profit handsomely during this negative cash flow period, paying himself over $8,000 ***per week.***

---

[2] The Settlement Agreement contains a confidentiality provisions, and therefore Mr. Patel has only described the Settlement Agreement generally. Mr. Patel will submit a copy of the Settlement Agreement for an *in camera* review if this Court so requests.

5

18. Indeed, at the hearing on First Day Matters on August 11, 2016, both this Court and the U.S. Trustee were concerned with the amount of Mr. Sakaria's salary. Those concerns are very legitimate, especially in light of the sworn and verified allegations in the New Jersey Litigation that Mr. Sakaria funneled money to himself that should have remained in the company. Based on the budget that was submitted on August 19, Debtor has allocated $50,100 to "payroll expenses." A true and correct copy of that budget is attached hereto as **Exhibit 2**. *More than half* of that allocation goes to Mr. Sakaria's salary.

19. In addition to Mr. Sakaria's salary, the nature of lending activity between Mr. Sakaria and Debtor is unclear at this early stage of the proceedings. For example, in Debtor's Schedule E/F filed on August 19, 2016 (*see* ECF No. 37), Debtor lists Mr. Sakaria as having an unsecured claim in the amount of $65,000. Then, in its Form 207 disclosure, Mr. Sakaria is noted as having paid to himself $29,669.28 as a "reimbursement" for a shareholder loan totaling $33,250. *See id.* Debtor's balance sheet, also submitted on August 19, lists under "Long-Term Liabilities" a "loan from shareholder" in the amount of $3,580.72, and a separate "shareholder loan" in the amount of $41,700. *See* **Exhibit 3**. At the meeting of creditors on September 1, 2016, Mr. Sakaria was not sure whether all of his lending activity with Debtor was memorialized by a promissory note.

20. This limited objection, moreover, is based on the history of Mr. Sakaria's apparent misuse of company assets. As was alleged in the New Jersey Litigation, Mr. Sakaria failed to submit reimbursement requests to Debtor, yet he was "reimbursed" hundreds of thousands of dollars. Mr. Sakaria used Debtor's funds to pay off personal debts, and he failed to file Debtor tax returns for several years. It was further alleged in the New Jersey Litigation that

Mr. Sakaria siphoned tens of thousands of dollars from Debtor's then-Wachovia account for his personal use, which included thousands of dollars for gambling in lavish Las Vegas casinos.

21. In 2007, for example, Mr. Sakaria dropped $55,000 a the Bellagio in Las Vegas using Debtor's funds from the company bank account, and he lost hundreds of thousands of dollars in online poker. And over the course of several years, Mr. Sakaria transferred funds from Debtor's corporate account to make payments on his personal credit card, which included gambling-related debts.

22. In the New Jersey Litigation, Mr. Patel did not take full discovery on the issues of Mr. Sakaria's improper use of Debtor's assets (he appeared to be looting the company) because the parties agreed to bifurcate discovery on the issues and take discovery only on whether Mr. Patel was an owner of Debtor. Following several weeks of expedited discovery, the parties entered into the Settlement Agreement.

23. In this proceeding, Mr. Patel issued two Subpoenas for documents and deposition testimony directed to both Mr. Sakaria and Dean Koehler.[3] Mr. Patel believes that the outstanding discovery will shed additional, valuable light on how Mr. Sakaria has operated Debtor since resolution of the New Jersey Litigation and whether Debtor had to declare bankruptcy for reasons other than those stated by Mr. Sakaria.

24. In the interim, while Debtor works toward a plan of reorganization that protects the rights of creditors, Mr. Sakaria should be precluded from paying himself $8,000 per week because, as the sole shareholder and owner of an allegedly insolvent Debtor, he owes fiduciary

---

[3] Counsel for both Debtor and Mr. Patel are working on resolving certain objections to document requests, and are confident they will be able to resolve those disputes and schedule a time for production and depositions. Once those documents are received and the depositions are taken, Mr. Patel may supplement this objection.

duties to Mr. Patel and the other creditors.  *See Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 (3d Cir. 2002) (interpreting New Jersey law; "Once a corporation becomes insolvent . . . the directors assume a fiduciary or 'quasi-trust' duty to . . . creditors.  In this quasi-trust relationship, 'officers and directors cannot prefer one creditor over another, ***and they have a 'special duty not to prefer themselves*.*'***") (emphasis added) (quoting *AYR Composition, Inc. v. Rosenberg*, 261 N.J. Super. 495, 505 (App. Div. 1993); *In re Stevens*, 476 F. Supp. 147, 153 n.5 (D.N.J. 1979)); *see also AYR Composition, Inc.*, 261 N.J. Super. at 505 ("As the sole directors and officers of R/M, defendants not only owed a fiduciary duty to R/M while it remained in existence, but they also owed a quasi-trust duty to . . . R/M's creditor, when R/M became insolvent.").

25.    Mr. Patel notes that as of the date of this objection, no monthly operating report has been filed.  Debtor may be working with a negative cash flow, and the budget that Debtor proposed in connection with the use of cash collateral demonstrates that Mr. Sakaria intends to continue to pay himself a salary that would be considered exorbitant for any small business and in breach of his fiduciary obligations to Mr. Patel and the other creditors.  *See Foodtown, Inc.*, 296 F.3d at 173.

## CONCLUSION

26.    Mr. Patel objects to Mr. Sakaria continuing to pay himself a salary of over $400,000 per year on the grounds that:  (1) Mr. Sakaria owes fiduciary duties to Mr. Patel and the other creditors that expressly prohibit these preferential payments; (2) discovery is still outstanding with respect to the operations of Debtor; (3) Mr. Sakaria, the sole shareholder and owner of Debtor continues to draw a significant salary and has a history of misusing Debtor's

assets for his own personal benefit; and (4) a monthly operating report has not yet been submitted.

Dated: September 9, 2016

**DUANE MORRIS LLP**
A Delaware Limited Liability Partnership
One Riverfront Plaza
1037 Raymond Blvd., Suite 1800
Newark, New Jersey 07102
*Counsel for Creditor*
*Ketan Patel*

By: s/ *John J. Zefutie, Jr.*
    John J. Zefutie, Jr.