**TRENK, DiPASQUALE,
DELLA FERA & SODONO, P.C.**
347 Mt. Pleasant Avenue, Suite 300
West Orange, NJ 07052
(973) 243-8600
Anthony Sodono III
Michele M. Dudas
*Counsel for VoicePulse Inc.,*
*Chapter 11 Debtor and Debtor-in-Possession*

**THE LAW FIRM OF BRIAN W. HOFMEISTER, LLC**
691 State Highway 33
Trenton, New Jersey 08619
(609) 890-1500
Brian W. Hofmeister
*Counsel for Ravi Sakaria*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| VOICEPULSE INC., | Case No. 16-25075 (MBK) |
| Debtor. | Hearing Date and Time:<br>October 17, 2016, at 10:00 a.m. |

**CERTIFICATION OF RAVI SAKARIA, PRESIDENT OF VOICEPULSE, INC., IN SUPPORT OF MOTION TO QUASH SUBPOENAS ISSUED BY UNSECURED CREDITOR KETAN PATEL**

I, Ravi Sakaria, of full age, hereby certify and state as follows:

1. I am the President and sole shareholder of VoicePulse, Inc., Chapter 11 debtor and debtor-in-possession ("Voice" or "Debtor"). As such, I am fully familiar with the facts set forth herein and submit this Certification in support of the Motion to quash the Subpoenas issued by Ketan Patel ("Patel") addressed to me, as President of the Debtor ("Sakaria Subpoena"), and

Dean Koehler, CPA, as accountant to the Debtor, and accountant to me individually ("Koehler Subpoena").

2. I formed the Debtor in April of 2003. The Debtor provides voice over internet based telecom services ("Services").

3. At the time the company was formed, there was no real competition, and the Debtor was an innovator in this industry. I was the one that designed the creative process and business model to provide residential customers with the Services. I also created and implemented the infrastructure. Through my efforts, and my efforts alone, I developed the Voice business.

4. At the time the Debtor was formed, I had one other employee that assisted with the first working system that the company employed.

5. Soon after that version was implemented, I hired Patel, my cousin. He never invested any money into the Debtor and for all intents and purposes, was an employee. He alleges that he is a "co-founder," which fact is in dispute.

6. During the first several years, I worked tirelessly, and had no salary in 2003 and a minimal salary in 2004. In 2005, my salary was $18,000, and it increased to $44,000 in 2006.

7. At some point after 2006, I explored selling the company, and in 2009 I hired an outside management team to run the operations.

8. In 2009 or 2010, when I was not involved in the day-to-day operations of the company, there was a fire at a collocation facility, and the Debtor had to rebuild its systems. Despite me and one other employee building the initial software system, this second effort, without my assistance, required thirteen employees, including Patel.

9. On October 18, 2010, Patel initiated suit against me in the Superior Court of New Jersey, Middlesex County, Chancery Division, at Docket No. MID-C-208-10 ("Litigation") and, among other allegations, that he had an ownership interest in the business.

10. It was a contentious and expensive lawsuit from the start. Faced with the costs associated with defending the Litigation, the uncertainty in the length of time and the outcome of the Litigation, and my desire to focus my time and energy on the Debtor's business, I settled with Patel by Settlement Agreement dated November 23, 2010 ("Agreement").

11. The Agreement contains confidentiality clauses and is not attached as an exhibit for that reason. The Debtor and I, individually, paid certain substantial lump sum payments to Patel, and the Debtor has made monthly payments of $11,111.11 per month since January 1, 2012.

12. The Agreement also provided Patel with a security interest in the Debtor's assets, and a UCC-1 was issued.

13. I returned to the day-to-day operations in late-2010.

14. Under the Agreement, the Debtor has produced quarterly financial statements to Patel.

15. Patel and his brother, Nayan, formed KPNP Telecom, LLC ("KPNP") in January 2011. KPNP was a direct competitor of Voice. Upon information and belief, the business was a failure and is now defunct.

16. Over the course of the last six (6) years, several issues have affected the Debtor's business. There has been a slow attrition of customers, which accelerated over the last six (6) months. Moreover, there has been increased competition, which has put the Debtor at a strategic disadvantage, because it cannot be price-competitive based upon aging infrastructure.

17. In early 2014, I made the decision to re-write the service platform, which was another complete rebuild of the systems. All aspects of the rebuild were completed by me, and two (2) other employees.

18. Vendors were threatening to disconnect the Debtor's services, which would in turn would have interrupted services to the Debtor's customers, which would lead to irreparable harm to the Debtor's business. Cash would cease and enterprise value would diminish.

19. Therefore, left with no choice based upon a pending shut-off by a creditor, the Debtor filed its voluntary Chapter 11 Petition on an emergent basis on August 5, 2016 ("Filing Date").

20. Except for the payment due August 1, 2016, all payments were current to Patel.

21. In preparing its schedules and determining whether a motion for use of cash collateral was required, it came to my attention that Patel allowed his UCC filed on December 14, 2010 to lapse, as it was not refiled within the five (5) year period.

22. Therefore, as of the Filing Date, Patel was no longer is entitled to any security interest in the Debtor's assets, which would have potentially included a lien on cash or cash equivalent.

23. As of the Filing Date and for a period of approximately six (6) years prior thereto, I have the following duties and responsibilities with the Debtor, and dedicate approximately a minimum of eighty (80) hours per week to the Debtor's business:

- Executive Management - all strategic business decisions;
- Operations Management - all employees report directly to me;
- Finance Management - all accounting and bookkeeping responsibilities, including payables, payroll and forecasting;
- Lead Software Architect - design all of VoicePulse's software systems;
- Lead Software Developer - write the majority of the actual code that comprises VoicePulse's back-end software. This includes software written in C, C++, C# and Javascript;

- Senior Network Engineer - designed all of the company's wide area networking, and am the senior person for maintaining, troubleshooting the systems on an ongoing basis;
- Database Management - architect all of the company's back-end databases on platforms including MySQL and Microsoft SQL Server;
- Sales - handle all customer sales. This includes lead generation, development, deal negotiation, and closing;
- Marketing - create marketing content (including our public web site content and online advertising content), and budget and implement online advertising campaigns;
- Customer Support Management - oversee customer support. This includes spot-checking, reviewing, and commenting on customer trouble ticket responses. I also create, oversee and improve the support process on a continuing basis; and
- Office Administration - handle general office management and administrative duties.

24. On August 25, 2016, Patel served the Sakaria Subpoena, addressed to me, as President of the Debtor, annexed as **Exhibit "A."** On that same date, Patel served the Koehler Subpoena, annexed as **Exhibit "B."**

25. The Sakaria Subpoena contains the following sixty-four (64) requests for information, all within a time from of January 2011 to the present:

    a. Documents reflecting or referring to the relationship of Ravi Sakaria to the Debtor.

    b. Documents reflecting or referring to any entity or entities in which Ravi Sakaria has an ownership interest. Your production should include, without limitation, documents identifying all officers, managers, and members of such entity or entities. Your production also should include, without limitation, copies of operating agreements, articles of organization, employment agreements, financial statements, and any corporate records filed with any state or federal agency by or on behalf of such entity or entities.

    c. Documents reflecting or referring to any loans made by any Person to Debtor, either directly or indirectly, including, without limitation, documents reflecting or referring to (i) the dates of loan; (ii) the amount of each loan; (iii) the terms of any and all agreements covering each loan; and (iv) the return or repayment of any part of each loan by Debtor.

    d.    Documents reflecting or referring to any distribution of funds, payments, assignments, or transfers of assets from Debtor to any Person, either directly or indirectly, since January 2011 to present. Your production should include, without limitation, copies of any checks, money orders, cashier's checks, wire transfers, electronic transfers, instruments of payment, negotiable instruments, or any other documents representing payment or transfer of assets from Debtor to any Person.

    e.    Documents reflecting or referring to any distribution of funds, payments, assignments, or transfers of assets from Ravi Sakaria to any Person, either directly or indirectly, since January 2011 to present. Your production should include, without limitation, copies of any checks, money orders, cashier's checks, wire transfers, electronic transfers, instruments of payment, negotiable instruments, or any other documents representing payment or transfer of assets.

    f.    Documents reflecting or referring to any account in which the Debtor has an interest or to which it has access, wherever located, including, without limitation, documents reflecting or referring to the (i) the name in which the account is held; (ii) the type of account; (iii) transfers made from the account; and (iv) all parties to such transfers.

    g.    Documents reflecting or referring to any property that is worth $5,000.00 or more, in which the Debtor holds an interest, including, without limitation, intellectual property, accounts receivable, repurchase agreements, swaps, derivatives, treasury bills, money market funds, notes, bonds, securities, collateral held, inventory, consumer products, building products, any items of value, or any other kind of tangible or intangible asset, whether it has accrued or may accrue in the future, that is held by You, in escrow, trust, or as a nominee on behalf of the Debtor.

    h.    Documents reflecting or referring to any interest that the Debtor or any Debtor Entity owns in a patent, copyright, or invention, including, without limitation, documents concerning any licensing or other type of income collected as a result of the patent, copyright, or invention.

    i.    Documents reflecting or referring to money that the Debtor or any Debtor Entity ever borrowed from any Person, or property the Debtor or any Debtor Entity ever pledged or deposited to any Person, as collateral security including, without limitation, documents reflecting or referring to (i) the lender; (ii) the date of

    the transaction; (iii) the terms of the transaction; (iv) the amount borrowed from the lender; (v) the description of the property pledged or deposited, as collateral security; and (vi) the purpose of the transaction.

j.    Documents reflecting or referring to any collateral in which the Debtor or any Debtor Entity, directly or indirectly, has an interest that is in Your possession, custody, or control including, without limitation, documents reflecting or referring to (i) the description of the collateral; (ii) the value of the collateral; (iii) the interest held by the Debtor or any Debtor Entity; and (iv) the date You acquired the collateral.

k.    Documents reflecting or referring to any debt owed to any Person by the Debtor or any Debtor Entity including, without limitation, documents reflecting or referring to (i) the amount of the debt; (ii) the date the Debtor or any Debtor Entity incurred the debt; (iii) the amount of the debt that has been repaid; (iv) the date of each such repayment; (v) the source of funds for each such repayment; and (vi) the method of payment including, without limitation, the financial institutions from which funds were disbursed by the Debtor or Debtor Entity (including account numbers, wire transfer information, ABA numbers, check numbers, where applicable, and persons endorsing or authorizing payment on behalf of the payor).

l.    Documents reflecting or referring to any debt owed to the Debtor or any Debtor Entity by any Person including, without limitation, documents reflecting or referring to (i) the amount of the debt; (ii) the date that the Person incurred the debt; (iii) the amount of the debt that has been repaid; (iv) the date of each such repayment; (v) the source of funds for each such repayment; and (vi) the method of payment including, without limitation, the financial institutions from which funds were disbursed by the Person (including account numbers, wire transfer information, ABA numbers, check numbers, where applicable, and persons endorsing or authorizing payment on behalf of the payor).

m.    Documents reflecting or referring to any property, real or personal, that the Debtor or any Debtor Entity has sold, conveyed, assigned, or gifted to any Person, since January 1, 2011, including, without limitation, documents reflecting or referring to (i) the description of the property; (ii) the date of the sale, conveyance, assignment, or gift; (iii) the value of the property at the time of the sale, conveyance, assignment, or gift;

7

      (iv) the amount of consideration for the sale, conveyance, or assignment; and (v) the purpose of the sale, conveyance, assignment, or gift.

n.    Documents reflecting or referring to any transactions between any Person and the Debtor or any Debtor Entity as a result of which the Debtor or Debtor Entity is now, or may in the future become entitled to, money or credit including, without limitation, documents reflecting or referring to (i) the type of transaction; (ii) the parties to the transaction; (iii) the date of the transaction; and (iv) the amount of money or credit to which the Debtor or Debtor Entity is entitled.

o.    Documents reflecting or referring to any property, real or personal, that Debtor has sold, conveyed, transferred, or assigned, since January 1, 2011, including, without limitation, documents reflecting or referring to (i) the description of the property; (ii) the date of the sale, conveyance, or assignment of the property; (iii) the person or entity to whom the property was sold, conveyed, or assigned; (iv) the relationship with the person or entity to whom the property was sold, conveyed, or assigned the property; (v) the reason for the sale, conveyance, or assignment; and (vi) the terms of the sale, conveyance, or assignment.

p.    Documents reflecting or referring to any gift Ravi Sakaria has made of any real or personal property to anyone since January 1, 2011, including, without limitation, documents reflecting or referring to (i) the description of the property; (ii) the date the property was gifted; (iii) the person or entity to whom the gift was made; (iv) the relationship with the person or entity to whom the gift was made; and (v) the reason for the gift.

q.    Documents reflecting or referring to correspondence between any Person and the Debtor's accountants, including, without limitation, correspondence relating to (i) tax preparation and/or filing; (ii) financial planning; (iii) preparation of financial statements; (iv) financial transactions engaged in by any Person and/or the Debtor; and (v) the creation and maintenance by the Debtor of any individual business, partnership, limited liability company, or corporate entity, including without limitation, any Debtor Entity.

r.    Documents reflecting or referring to correspondence between Ravi Sakaria and any accountants, including, without limitation, correspondence relating to (i) tax preparation and/or filing; (ii)

8

        preparation of financial statements; and (iii) financial transactions engaged in by You.

s. Documents reflecting or referring to any Federal, State, municipal or foreign income tax returns for 2011, 2012, 2013, 2014, and 2015 filed by, or on behalf of, Ravi Sakaria including, without limitation, any back-up documents used to prepare the tax returns.

t. Documents reflecting or referring to any Federal, State, municipal or foreign income tax returns for 2011, 2012, 2013, 2014, and 2015 filed by, or on behalf of, Debtor including, without limitation, any back-up documents used to prepare the tax returns.

u. Documents reflecting or referring to payments by the Debtor or any Debtor Entity of any leases, mortgages, or deeds of trust, on property leased or owned by or held on behalf of any Person. Your production should include, without limitation, real estate deeds, leases, mortgages, mortgage notes, deeds of trust, deeds of trust notes, payment schedules, lease payments, lease accruals, m0ligage payments, cancelled checks, deposit slips, electronic transfers, and wire instructions.

v. Documents reflecting or referring to any credit accounts in the name of Ravi Sakaria to which the Debtor or any Debtor Entity has access including, without limitation, documents reflecting or referring to (i) the account number, (ii) the date the account was opened; (iii) the primary signatories to the account; (iv) the credit limit on the account; (v) the current balance on the account; and (vi) records of payments for the last 12 months on the account (including documents identifying the source of funds for the payment).

w. Documents reflecting or referring to any Financial Records of the Debtor.

x. Documents reflecting or referring to any Person that has or had access to the Financial Records of the Debtor.

y. Documents reflecting or referring to any Financial Records of Ravi Sakaria.

z. To the extent not encompassed within these requests, documents that in any way relate to, regard, concern, or otherwise comprise payroll statements of Debtor from January 1, 2011 to present.

9

aa. Documents that in any way relate to, regard, concern, or otherwise comprise contracts and/or agreements between Debtor and any vendors or consultants entered into between January 1, 2011 to the present.

bb. Documents that in any way relate to, regard, concern, or otherwise comprise payments from Debtor to any vendors or consultants between January 1, 2011 to present.

cc. Documents that identify any and all employees of Debtor from January 1, 2011 the present.

dd. Documents relating or referring to compensation (including, but not limited to, wages, bonuses, equity interests, or other fringe benefits) paid to Debtor's employees from January 1, 2011 to present.

ee. Documents that in any way relate to, regard, or concern any claims made against Debtor by any of Debtor's employees from January 1, 2011 to present.

ff. Documents that identify any and all independent contractors of Debtor from January 1, 2011 to present.

gg. Documents relating or referring to compensation (including, but not limited to, wages, bonuses, equity interests, or other fringe benefits) paid to any of Debtor's independent contractors from January 1, 2011 to present.

hh. Documents that in any way relate to, regard, or concern, any claims made against Debtor by an of Debtor's independent contractors from January 1, 2011.

ii. Documents reflecting or referring to any real property in which Ravi Sakaria holds any interest. Your production should include, without limitation, documents reflecting or referring to (i) a description of the assets or property; (ii) the location of the assets or property; and (iii) the value of the assets or property.

jj. Any correspondence between Ravi Sakaria and any other individual (excluding retained counsel) that in any way relates to, regards, or otherwise concerns the Settlement Agreement in the

        matter of *Ketan Patel v. Ravi Sakaria and VoicePulse, Inc.*, Docket No. MDX-C-208-10.

kk.   Any and all documents that in any way relate to, regard, concern, otherwise comprise Mr. Patel's efforts to enforce the Settlement Agreement, including, but not limited to, communications between you and any other Person (excluding retained counsel).

ll.   Documents that reflect or refer to new customers generated by any Person on behalf of Debtor from January 1, 2011 to present.

mm.   Documents that reflect or refer to all of Debtor's customers from January 1, 2011 to present.

nn.   Documents reflecting or referring to any financial statements, loan applications, or other documents prepared or presented by Ravi Sakaria to any bank, financial institution, lender, mortgage company, or other creditor since January 1, 2011 to present.

oo.   Documents reflecting or referring to any interest Ravi Sakaria has in any mortgage, mechanic's lien, or other lien on real property including, without limitation, documents reflecting or referring to (i) the type of interest; (ii) the amount of the lien; (iii) the value of the subject property; (iv) the description of the subject property; and (v) the location of the subject property.

pp.   Documents reflecting or referring to any judgments pending in favor of Ravi Sakaria, including, without limitation, documents reflecting or referring to (i) the name and index number of the action; (ii) the name of the court where the action is pending; (iii) the nature of the action; (iv) the names and contact information of all the parties to the action; and (v) to the extent the judgment is a money judgment, the amount of the judgment.

qq.   Documents reflecting or referring to any right or interest that Ravi Sakaria, his spouse, and/or his children have in any action now pending in any court or arbitration forum, including, without limitation, documents reflecting or referring to (i) the name and index number of the action; (ii) the name of the court or arbitration forum where the action is pending; (iii) the nature of the action; (iv) the names and contact information of all the parties to the action; and (v) the nature of the right or interest.

rr.  Documents reflecting or referring to any of Ravi Sakaria's assets or property in the possession, custody, or control of his spouse, that are subject to liens, attachments, or other encumbrances including, without limitation, documents reflecting or referring to (i) the description of the assets or property; (ii) the location of the assets or property; (iii) the value of the assets or property; and (iv) the lien, attachment, or encumbrance with respect to each asset or property.

ss.  Documents reflecting or referring to any real estate of which Ravi Sakaria and/or his spouse are or were a lessor, including, without limitation, documents reflecting or referring to (i) the date of the lease; (ii) the terms of the lease, including, without limitation, its duration; (iii) the identity of the lessee; and (iv) the location of the real estate.

tt.  Documents reflecting or referring to any interest Ravi Sakaria and/or his spouse has in any mortgage, mechanic's lien, or other lien on real property including, without limitation, documents reflecting or referring to (i) the type of interest; (ii) the amount of the lien; (iii) the value of the subject property; (iv) the description of the subject property; and (v) the location of the subject property.

uu.  Documents reflecting or referring to any accounts (or other assets) Ravi Sakaria has created or maintained, to which the Debtor is a signatory, or to which the Debtor has access, outside the United States, including, without limitation, in the Cayman Islands, British Virgin Islands, Bahamas, the Isle of Man, Jersey (United Kingdom), or Lichtenstein (whether anstalts, stiftungs, or otherwise).

vv.  Documents reflecting or referring to any accounts (or other assets) Ravi Sakaria has created or maintained outside the United States, including, without limitation, in the Cayman Islands, British Virgin Islands, Bahamas, the Isle of Man, Jersey (United Kingdom), or Lichtenstein (whether in anstalts, stiftungs, or otherwise).

ww.  Documents reflecting or referring to expense reports Ravi Sakaria submitted to Debtor from January 1, 2011 to present.

xx.  Documents reflecting or referring to Debtor's payment of any expenses incurred by any Person from January 1, 2011 to present.

yy. Documents comprising Ravi Sakaria's resume.

zz. Documents that in any way relate to, regard, concern, or otherwise comprise W-2s that in any way relate to Ravi Sakaria's employment with Debtor.

aaa. Documents that in any way relate to, regard, concern, or otherwise comprise W-2s that in any way relate to the employment of any of Ravi Sakaria's family members with Debtor.

bbb. Documents that in any way relate to, regard, concern, or otherwise comprise 1099-DIVs that related to Ravi Sakaria's ownership of Debtor.

ccc. Documents that in any way relate to, regard, or concern Ravi Sakaria's ownership, involvement, or connection to any entity (other than the Debtor).

ddd. Documents that in any way relate to, regard, concern, or otherwise comprise financial statements that Debtor prepared for any Person.

eee. Documents that in any way relate to, regard, concern, or otherwise comprise credit card statements in the name of Ravi Sakaria.

fff. Documents that in any way relate to, regard, concern, or otherwise comprise credit card statements in the name of Debtor.

ggg. Documents that reflect or refer to any potential purchaser of Debtor or the assets of Debtor.

hhh. Documents that in any way relate to, regard, concern, or otherwise comprise donations made by Ravi Sakaria to any institution, including, without limitation, donations to charitable institutions, medical institutions, and/or educational institutions.

iii. To the extent not encompassed within these requests, documents referring to or reflecting any ownership interest Ravi Sakaria and/or his spouse has in any other entity, business, or joint venture.

jjj. To the extent not encompassed within these requests, documents

        referring to or reflecting any source of income to Ravi Sakaria and/or his spouse from January 1, 2011 to present.

kkk. To the extent not encompassed within these requests, documents that regard or concern the Debtor, including without limitation, the Debtor's articles of organization, bylaws, and meeting minutes.

lll. To the extent not encompassed within these requests, documents that regard or concern the transfer, conveyance, assignment, or other movement of any assets of the Debtor to any Person since January 1, 2011.

26. The Koehler Subpoena contains the following twenty-three (23) requests for information, also within a time from of January 2011 to the present:

a. Documents reflecting or referring to the relationship of You to the Debtor.

b. Documents concerning or reflecting the issuance of shares of stock of Debtor from January 1, 2011 to present.

c. All documents concerning the formation of Debtor, including any certificates of incorporation, by-laws, or amendments to same.

d. Documents concerning or reflecting your retention by Debtor.

e. Documents concerning or reflecting Debtor's profits and/or losses from January 1, 2011 to present.

f. Documents concerning or reflecting Debtor's expenses from January 1, 2011 to present.

g. Documents that in any way relate to, regard, concern, or otherwise comprise of communications between You and any other Person regarding Debtor.

h. Documents concerning or reflecting all bank accounts of Debtor.

i. Documents concerning all deposits into any of Debtor's bank accounts from January 1, 2011 to present.

j. Documents concerning each withdrawal at any Person's request or direction from any of Debtor's bank accounts from January 1, 2011 to present.

k. Documents referring or reflecting balances or bank statements pertaining to any of Debtor's bank accounts from January 1, 2011 to present.

14

  l. To the extent not encompassed within these requests, any and all communications between You and Mr. Sakaria.

  m. Documents that in any way relate to, regard, concern, or otherwise comprise tax returns filed by or on behalf of Debtor from January 1, 2011 to present.

  n. Documents that in any way relate to, regard, or concern compensation paid by Debtor to Mr. Sakaria.

  o. Documents that in any way relate to, regard, concern, or otherwise comprise agreements between Debtor and Mr. Sakaria concerning Mr. Sakaria's compensation and/or reimbursement of expenses from January 1, 2011 to present.

  p. All documents that were provided to you or reviewed by you with regard to Debtor.

  q. Documents referring or reflecting the financial condition of Debtor.

  r. Documents that in any way relate to, regard, concern, or otherwise comprise financial statements prepared by, or on behalf of, the Debtor for any Person.

  s. To the extent not encompassed within these requests, any and all documents that in any way concern Debtor.

  t. Documents that in any way relate to, regard, concern, or otherwise comprise communications between you and any other Person regarding the Settlement Agreement.

  u. Documents referring to or reflecting any ownership interest of Mr. Sakaria in any other Person.

  v. Documents referring to or reflecting any source of income to Mr. Sakaria and/or his spouse from January 1, 2011 to present.

  w. Documents referring to or reflecting meeting minutes or action taken by the Debtor with regard to any matter that concerned the Debtor's business and/or operations.

27. Counsel to the Debtor and counsel to Patel attempted to streamline the requests, and explained the concerns about the nature, scope and time frames for some of the requests set forth in the respective Subpoenas.

28. On September 14, 2016, Debtor's counsel once again had a discussion regarding the scope of the documents sought. Although some of the requests were tailored, counsel to

Patel will not agree to limit the time periods of the voluminous requests, will not agree to remove requests for my personal tax information from the Koehler Subpoena, and will not delete requests relating to purely confidential and proprietary information, which they seek to control through a confidentiality order for attorney review only.

29. On September 9, 2016, Patel filed a "Limited Objection" to the Debtor's use of cash collateral, and alleged various inflammatory allegations, which are disputed by the Debtor and me.

30. Patel's counsel has advised that the information is necessary to potentially object to the Debtor's use of cash collateral in this matter, and/or regarding the reasonableness of the salary I pay to myself as President of the Debtor, including a cause of action regarding a breach of fiduciary duty.

31. The information sought in the Sakaria Subpoena seeks my personal information, rather than information relating to the Debtor.

32. After the Litigation was settled, it came to my attention that Patel presented my family and my in-laws with some of the financial and other information produced in the Litigation, in an attempt to disrupt interfamily relations.

33. There is a concern that he will continue the same course of action through information obtained in the Rule 2004 proceeding.

34. All of the Requests are outside of the four (4) year fraudulent transfer claw-back period. Patel has had financial statements produced to him since the Litigation was settled in 2010. Therefore, he is seeking information that has already been provided and is in his possession or control.

35. Furthermore, Patel has already started a competitive business, KPNP, and there is concern that he will obtain proprietary information of the Debtor to start a new competing business. This specifically relates to the Requests for customer contracts and vendor contracts. Furthermore, based upon the previous conduct, there is concern that any information relating to a potential buyer (which is still in purely negotiation stages), will be used to thwart the sale of the Debtor's business and force this case into Chapter 7.

36. Although there is a mechanism in place vis-à-vis a confidentiality order, Patel has previously breached the confidentiality provisions in the underlying Agreement of settlement in the State Court Litigation, and his counsel has demonstrated that they have done so as well, based upon the allegations raised in the "Limited Objection" filed to the Debtor's Motion for use of cash collateral.

37. I have done everything in my power to attempt to save the Debtor's business, which is why a Chapter 11 proceeding was the only option available to the Debtor.

38. I have been advised that a Rule 2004 examination can cover a broad range of areas, but it is used to investigate the Debtor's acts, conduct and financial affairs. It is clear that even with a "fishing expedition," Patel is going beyond the scope, and is seeking the information for other purposes, including a bad faith attempt to harass and intimidate me, as principal of the Debtor, and/or to try to force the Debtor out of business.

39. There is no family member of mine that is employed by the Debtor, and none have been employed by the Debtor since I terminated the employment of Patel and his brother.

40. As to my personal information sought from the Koehler Subpoena, that is my personal information and Patel should not be entitled to it.

17

41. As set forth herein and in the Debtor's Reply to the Limited Objection to use of case collateral, I already dedicate all of my time to the operations of the Debtor's business. As this Court is also aware, my salary was reduced to approximately $250,000, with an administrative claim for the balance of my normal salary of approximately $416,000. Based upon the volume of documents requested alone, it would detract from my ability to perform the day-to-day operations of the Debtor.

I hereby certify that the foregoing statements made by me are true. If any of the foregoing statements made by me are willfully false, I am subject to punishment.

**VOICEPULSE, INC.**

By: /s/ Ravi Sakaria
    RAVI SAKARIA,
    President and Individually

Dated: September 15, 2016

4829-2747-9352, v. 1